UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARMELO ROMERO and JUAN ROMERO,
*individually and on behalf of others similarly situated,*

Plaintiffs,

-against-

ANJDEV ENTERPRISES, INC. (d/b/a AMMA),
ANJU SHARMA, and DEVENDRA SHARMA,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|10|17

14 Civ. 457 (AT)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

In this wage-and-hour action, Plaintiffs, two former employees of the restaurant known as

Amma, allege that Defendants, Anjdev Enterprises, Inc., Anju Sharma, and Devendra Sharma,

violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-19, and the New

York Labor Law ("NYLL"). In particular, Plaintiffs claim that Defendants:

1. Improperly took a tip credit against Plaintiffs' wages;
2. Failed to pay Plaintiffs for all hours worked, including overtime;
3. Failed to pay Plaintiffs a spread-of-hours premium;
4. Misappropriated Plaintiffs' tips; and
5. Failed to provide Plaintiffs written wage notices and statements.

The Court held a bench trial on July 27 and 28, 2015. As witnesses, Plaintiffs called

Nelson Murillo and themselves—Carmelo and Juan Romero. Defendants called Kiran Shrestha,

Jay Perera, Prisuja Rajak, Ricky Phel, and themselves—Anju and Devendra Sharma. Post-trial

memoranda were fully submitted on October 8, 2015.

In accordance with Federal Rule of Civil Procedure 52(a)(1), the Court will "find the

facts specially and state its conclusions of law separately" and, for the reasons stated below,

enter judgment in favor of Plaintiffs.

# FINDINGS OF FACT

I.  <u>Defendants</u>

Amma is an Indian restaurant located at 246 East 51st Street in Manhattan, owned and operated by Anjdev Enterprises, Inc.  J.S. § A.3-.4.[1]  Anju is Anjdev's sole shareholder.  *Id.* § A.6.  During the period at issue in this case, the restaurant was open from 11:00 a.m. until 11:00 p.m. each day, Def. Ex. J ("Shrestha Aff.") ¶ 4; Def. Ex. M. ("Devendra Aff.") ¶ 2; Def. Ex. N ("Anju Aff.") ¶ 2, and employed three delivery workers during those hours, including Plaintiffs, brothers Carmelo and Juan Romero, Tr. 48:4-8, 115:24-25, 124:19-23, ECF Nos. 86, 88.

Prior to trial, the parties stipulated that the Sharmas "jointly":

1.  Determined employees compensation;
2.  Determined employees' work hours and schedules;
3.  Determined employees' exempt or nonexempt status under the FLSA;
4.  Calculated employees' time worked;
5.  Prepared the restaurant's payroll;
6.  Maintained the restaurant's payroll records;
7.  Paid employees;
8.  Hired and fired employees; and
9.  Managed and supervised employees.

J.S. § A.5.  At trial, however, Anju testified that Devendra alone "was the one who was doing all [the] payroll and everything, which [Anju] was not doing."  Tr. 291:12-14.  Likewise, in her trial affidavit, Anju attested that the restaurant paid Plaintiffs "a regular rate of $4.65 per hour" in 2009 and 2010 and $5.00 per hour in 2011 and 2012.  Anju Aff. ¶ 8.  But at trial she disclaimed her role in and knowledge of payroll decisionmaking.  Tr. 299:7-14.  Finally, although Anju stated in her affidavit that Plaintiffs "sign[ed] an itemized pay receipt every week [that]

---

[1] Citations to the parties' joint stipulations (J.S.) refer to subsections of section VII of the Proposed Joint Pre-Trial Order, ECF No. 85.

outline[d] the salary and Seamless tips"[2] Plaintiffs received, Anju Aff. ¶ 9, when shown the pay

receipt records at trial and asked if she was familiar with them, she testified that they were "made

by [her] husband, . . . what is written there, . . . that's his job . . . because he is the one who is

doing the payroll," Tr. 299:19-300:7.

II.      Other Amma Employees

A.  Kiran Shrestha and Salvador Reyes

Kiran Shrestha is the most senior waiter at Amma, having worked there since 2003.  Tr.

157:25-158:2, 160:6-22; Shrestha Aff. ¶¶ 2-3.  As a senior manager, he directly supervises the

delivery workers, which he testified involves observing when they arrive and leave as well as the

tasks they perform.  Tr. 161:4-9.  In his affidavit, Shrestha attested that Amma paid its tipped

employees "their full tips," Shrestha Aff. ¶ 5, but at trial he admitted that he did not personally

know if employees received their Seamless tips, because those were handled by the Sharmas, Tr.

169:4-170:9.  Likewise, although he attested in his affidavit that Plaintiffs signed "an itemized

pay receipt every week, outlining the salary and Seamless tips they received," Shrestha Aff. ¶ 5,

he admitted at trial that he did not review these receipts or see Plaintiffs sign them; rather, he

"just kn[e]w" that employees had to sign a receipt in order to receive their pay, Tr. 170:10-172:7.

Shrestha testified that he works at Amma five days per week and has closed and locked

up the restaurant on most nights for the past eight or nine years, with an employee identified as

Salvador Reyes closing the restaurant in his absence.  *Id.* 167:4-8, 168:16-19.  Plaintiffs,

however, testified that Shrestha only occasionally closed—about once or twice per week—and

that Reyes usually closed the restaurant.  *Id.* 88:17-19, 116:22-117:13, 119:7-9.  Given

---

[2] Seamless is an online food delivery service.  Seamless Home Page, https://www.seamless.com
(last visited Jan. 12, 2017).

Shrestha's demonstrated willingness to attest to purported facts outside his personal knowledge, as well as the inconsistencies raised by his trial testimony, the Court instead credits Plaintiffs' consistent accounts that Reyes—not Shrestha—regularly closed the restaurant and observed the time at which Plaintiffs finished their shifts. *See* Fed. R. Evid. 602; *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 463 n.15 (S.D.N.Y. 2015); *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at \*4 n.12 (S.D.N.Y. Aug. 13, 2014).

### B.  Jay Perera

Jay Perera is the second-most senior waiter at Amma after Shrestha, having been employed there since 2010. Tr. 141:11-14, 143:3-6, 160:19-22; Def. Ex. I ("Perera Aff.") ¶¶ 2-3. Perera considers the Sharmas both his employers and his close friends. Tr. 141:15-18.

In his affidavit, Perera attested that delivery workers never spent more than ten percent of their shift on cleaning duties and that all employees had to leave the restaurant at 11:00 p.m. each night. Perera Aff. ¶¶ 7-8. At trial, however, Perera admitted that supervising delivery workers is not part of his job and that his personal knowledge of delivery workers' shift lengths is limited to Tuesday nights, when he closes the restaurant. Tr. 143:17-20, 145:6-21, 146:14-18. Likewise, although Perera stated that Amma paid employees "their full tips," and that Plaintiffs signed "an itemized pay receipt every week, outlining the salary and Seamless tips they received," Perera Aff. ¶ 5, he admitted at trial that he never actually saw Plaintiffs' pay receipts, Tr. 153:13-25. He testified that he would see Plaintiffs sign the receipts "every now and then," *id.* 154:9-13, but he did not personally know whether they received Seamless tips, *id.* 155:15-18. Given these inconsistencies and Perera's willingness to testify to purported facts outside his personal knowledge, the Court does not credit his testimony regarding the time at which Plaintiffs' shifts ended, the extent of their cleaning duties, and whether they received Seamless tips, wage

statements, or other required notices.

C.  Prisuja Rajak

Prisuja Rajak works as the cashier and bookkeeper at Amma, having been employed there since 2008.  Tr. 181:8-10, 183:3-5; Def. Ex. L ("Rajak Aff.") ¶¶ 2-3.  Among her duties, Rajak helps the Sharmas track tips paid by customers for delivery orders.  Tr. 183:3-7.  Although she attested by affidavit that Amma paid employees "their full tips," and that Plaintiffs signed "an itemized pay receipt every week, outlining the salary and Seamless tips they received," Rajak Aff. ¶ 4, at trial she admitted that she did not personally know whether delivery workers received Seamless tips or wage statements, Tr. 182:16-183:12.  Accordingly, the Court does not credit Rajak's testimony on these matters.

D.  Ricky Phel

Ricky Phel has worked at Amma for seven years and maintained the restaurant's time records.  *See generally id.* 188-89, 271-75.  Phel initially testified that he wrote down the time when employees left the restaurant at the end of their shift.  *Id.* 272:3-6.  The restaurant's time sheets, however, largely do not reflect employees' clock-out times.  *See* Def. Ex. A.  Upon being presented with these records, Phel then disclaimed this responsibility, stating that Shrestha had this responsibility.  *See generally* Tr. 284-86.

III.    Plaintiffs

As noted above, Amma employed three delivery workers, including Plaintiffs, Carmelo and Juan Romero.  Carmelo worked at Amma from July 15, 2008[3] through November 30, 2013.[4] Juan worked there from November 1, 2008[5] through October 28, 2012.[6]

A.  Duties

Amma's three delivery workers each performed at least 25 to 30 deliveries per day, for a total of roughly 90 deliveries.  Tr. 51:7-11, 96:16-19; *see also id.* 16:18-25.  For almost every trip, a worker would make multiple deliveries.  *Id.* 51:12-23.  A worker could make deliveries at any time between noon and 11:00 p.m. or later.  *Id.* 53:4-9.  Although the kitchen closed between 3:00 p.m. and 5:00 p.m., as well as after 11:00 p.m., workers may have had to make deliveries

---

[3] Carmelo credibly testified that he began his employment in July 2008, Tr. 47:18-19; *see also* Pl. Ex. 11 ("Carmelo Decl.") ¶ 4, whereas the Sharmas attested that he began his employment on July 6, 2009, Devendra Aff. ¶ 5; Anju Aff. ¶ 5.  The only other evidence Defendants present to refute Carmelo's testimony are time records for him that begin in July 2009.  *See* Def. Exs. A-C. These records, however, are consistent with Carmelo's testimony that he did not begin clocking in or out until one and a half years into his time at Amma.  Tr. 103:16-20.  The Court accepts mid-July 2008 as a reasonable estimate for the start of his employment.

[4] Although the parties stipulated to that Carmelo worked at Amma until December 26, 2013, J.S. § A.7, Carmelo conceded at trial that he ceased his employment in November, Tr. 47:22-25.  The Court accepts the end of November 2013 as a reasonable estimate for the end of his employment.

[5] Juan credibly testified that he began his employment in 2008, "a few months" after Carmelo. Tr. 123:17-18; *see also id.* 113:6-9.  However, his declaration asserts that he began in July, the same month as Carmelo.  Pl. Ex. 12 ("Juan Decl.") ¶ 5.  Defendants contend that Juan began much later: on November 2, 2009.  Devendra Aff. ¶ 5; Anju Aff. ¶ 5; *see also* Def. Exs. A-C. The Court credits Juan's trial testimony and finds that the start of November 2008 is a reasonable estimate for the start of his employment.

[6] Defendants' records do not indicate Juan's working on October 29, 2012, *see* Def. Ex. A, whereas Juan's declaration asserts that his employment ended "on or about" that date, Juan Decl. ¶ 5.  Plaintiffs do not contest that the records accurately reflect the shifts Plaintiffs worked during the weeks covered by those records, *see* Pl. Proposed Findings 22 n.1, ECF No. 67, and the Court accepts October 28, 2012, as Juan's last day.

during those times. *Id.* 52:10-23, 68:21-69:7. The Court does not credit Devendra's testimony that Amma stopped accepting delivery orders at 2:45 p.m. and 9:45 p.m. for lunch and dinner, respectively, nor that he had never seen a delivery worker return later than 10:00 p.m. from their last trip. *Id.* 258:16-259:18. Devendra undermined these assertions by testifying that "90 percent of the time" he left for the night before Plaintiffs and that he usually did not stay through closing. *Id.* 254:5-255:6.

When delivery workers were not occupied with delivery trips, they would do "whatever needed to be done," *id.* 62:10, such as cleaning and preparing food, *id.* 58:14-16, 76:2-21; Carmelo Decl. ¶¶ 5-8; Juan Decl. ¶¶ 6-11. For example, delivery workers would clean the basement, refrigerator, freezer, and offices; take out the garbage; break down boxes; and help the kitchen prepare sauces, chop vegetables, and peel shrimp. Tr. 58:10-19, 62:4-10, 63:18-22, 69:23-70:11, 71:18-19, 76:4-11, 78:4-83:22, 125:22-126:4, 138:17-23, 139:4-11. The Court does not credit Devendra's testimony that delivery workers "are not supposed to be preparing the food" and that "[i]t's not their job." *Id.* 260:14-17. Carmelo credibly testified to the contrary; in particular, he explained that they were taught to make the green, white, and tamarind sauces that Amma provided with delivery orders. *Id.* 78:14-79:3. Although the delivery workers worked in the kitchen daily, Carmelo could not say exactly how much of his day was spent on these duties "because [they] were coming and going." *Id.* 60:16-18. For example, "if [he] was cutting an onion and [he] had to make a delivery, then [he] would leave to make the delivery." *Id.* 80:17-20. Carmelo did recall, however, a particular day on which he made no deliveries at all because he was covering for the kitchen assistant. *Id.* 58:18-19.

The delivery workers were tasked with specific cleaning duties for the hour from their arrivals at 11:00 a.m. until lunch service began at noon. *Id.* 64:7-8, 126:5-20, 257:7-15, 295:19-

24. Carmelo cleaned the dining room, and Juan swept and mopped the bathroom, sidewalk, and corridors. *Id.* 63:3-64:8, 121:14-122:21. When lunch service ended at 3:00 p.m., the delivery workers would repeat these cleaning tasks—as well as clean the kitchen—until dinner service began at 5:00 p.m. *Id.* 65:3-67:2, 68:8-71:12, 121:19-20, 122:6-7, 125:8-21, 257:16-25, 258:1-5, 259:23-260:8. Although Devendra testified that during this period the delivery workers would also eat their lunch, run personal errands, or simply rest, *id.* 259:25-260:8, Carmelo testified that he did not take any breaks between 3:00 p.m. and 5:00 p.m., *id.* 68:15-19, and that delivery workers ate their lunch "any way [they] could," *id.* 109:17-18; *see also id.* 137:23-138:2. After the restaurant closed for the night at 11:00 p.m., the delivery workers would once again clean the kitchen. *Id.* 116:5-17, 258:6-11. Given Plaintiffs' credible and consistent testimony concerning their duties, the Court finds that Plaintiffs were regularly tasked with non-delivery duties for at least three hours per shift, including the periods from 11:00 a.m. until noon, from 3:00 p.m. until 5:00 p.m., and after 11:00 p.m.

B.  Hours and Shifts Worked

Plaintiffs worked six days per week, Sundays through Fridays, beginning at approximately 11:00 a.m. and finishing around 11:30 p.m. or midnight. *Id.* 54:6-55:19, 81:3-10, 115:1-13, 116:15-17, 118:20-22. Roughly twice per month, though, they would stay as late as 1:00 a.m. or 2:00 a.m. to perform an intensive cleaning of the kitchen, including the oven vents and hoods. *Id.* 54:16-17, 55:1-9, 84:9-85:20, 119:1-9, 119:22-120:3, 121:5-8; Carmelo Decl. ¶ 12; Juan Decl. ¶ 13. Plaintiffs' credible testimony regarding these intensive cleanings is not refuted by Defendants' proffered receipts from an oil recycling company, which show only that the company retrieved cooking oil and grease from Amma. *See* Def. Ex. E; *see also* Tr. 260:22-261:13, 262:2-14. Moreover, Shrestha testified that Plaintiffs cleaned the ovens and oven vents

twice per week.  Tr. 167:9-16.

Defendants dispute that Plaintiffs worked past 11:00 p.m.; however, Defendants' records reflect only Plaintiffs' clock-in times.  *See* Def. Ex. A.  Defendants' witnesses gave conflicting and confusing testimony as to whether, when, and how the employees' clock-out times were recorded.  For example, Perera testified that that it had always been the case that both clock-in and clock-out times would be entered into a computer and then copied onto paper records.  Tr. 148:6-23.  But the papers to which Perera referred do not contain clock-out times, *see* Def. Ex. A, which Perera later acknowledged, Tr. 149:5-12.  Shrestha, by contrast, testified that until a certain computer system was instituted, clock-out times were not recorded "in any way."  *Id.* 165:3-13.  Phel testified that Amma did not begin inputting clock-out times into the computer system until this litigation began in 2014, *see id.* 276:6-15, 279:9-280:3, 287:23-288:6, 289:5-9.  Phel contradicted Shrestha by testifying that before the computer system was implemented, Shrestha was responsible for writing down the clock-out times.  *Id.* 276:15, 278:5-14, 284:2-12, 288:23-25.

All told, the defense witnesses agreed that clock-out times often went unrecorded.  Shrestha testified that usually workers stayed no later than midnight, so the restaurant did not "have to like maintain the time."  *Id.* 163:21-24.  Likewise, Devendra testified that "[s]ign-out was something not very important because we knew what time people are leaving."  *Id.* 213:6-10.  Anju, however, placed blame on the individual employees who, according to her, were required to clock out on the computer but "never did."  *Id.* 294:16-22.

Where an employer fails to maintain adequate or accurate records of its employees' hours, the employee need only "produce[] sufficient evidence to show the amount and extent of [his or her] work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery*

9

*Co.*, 328 U.S. 680, 687 (1946) (FLSA), *superseded by statute on other grounds*, Portal-to-Portal

Act of 1947, ch. 52, 61 Stat. 84; *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327,

332 & n. 3 (S.D.N.Y. 2005) (NYLL).  "The burden then shifts to the employer to come forward

with evidence of the precise amount of work performed or with evidence to negative the

reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S.

at 687-88.  If the employer fails to carry this burden, the employees' damages may be calculated

based on his or her reasonable approximation.  *Id.* at 688.

 In the absence of records specifying the exact hours they worked, Plaintiffs provided an

estimate of the length of their shifts that the Court finds to be justly and reasonably inferred from

the evidence.  Plaintiffs estimate they regularly worked from 11:00 a.m. until 11:30 p.m. or

midnight. *E.g.*, Carmelo Decl. ¶¶ 10-11; Juan Decl. ¶¶ 13-14.  This estimate is consistent with

defense witnesses' testimony that the last employees would leave around midnight.  *See, e.g.*, Tr.

164:3-13, 189:22-190:1.  The Court does not credit Devendra's testimony that employees stayed

until midnight only on "rare occasion," *id.* 255:12-15, because this was not within his personal

knowledge:  he did not regularly stay that late himself, *id.* 254:5-255:6, and did not provide any

other basis for this assertion.  Nor does the Court credit Defendants' weekly time sheets, Def. Ex.

B, which Devendra admitted were prepared retrospectively for purposes of this lawsuit, Tr.

205:18-23, by assuming that all employees worked a uniform eight hours for every shift, *see id.*

206:19-21; Def. Ex. B.  Defendants have, therefore, failed to carry their burden to negate the

reasonableness of Plaintiffs' estimate, and the Court accepts the estimate, finding that Plaintiffs

worked 13-hour days. *Anderson*, 328 U.S. at 688.

 Plaintiffs do not contest that Defendants' Exhibit A is an accurate record of the days on

which Plaintiffs worked during the weeks covered by those records. *See* Pl. Proposed Findings

22 n.1. Accordingly, the Court accepts these records for the purpose of determining how many days per week each Plaintiff worked. Because these records stretch back only until July 6, 2009, for the period preceding that date, the Court credits Plaintiffs' reasonable and just estimate that they worked six days per week. *See* Pl. Proposed Findings 11; Pl. Post-Trial Mem. Ex. A ("Pl. Damages Calculation"), at 1, ECF No. 90-1.

  C. Compensation

   1. Wages

Plaintiffs were paid in cash on a weekly basis as follows:

Carmelo Romero
- July 15, 2008 to July 31, 2008:   $ 375.00
- August 1, 2008 to December 31, 2008:   $ 400.00
- January 1, 2009 to December 31, 2009:   $ 425.00
- January 1, 2010 to February 19, 2012:   $ 450.00
- February 20, 2012 to November 4, 2012:   $ 475.00
- November 5, 2012 to November 30, 2013:   $ 525.00

Juan Romero
- November 2, 2008 to December 15, 2008:   $ 350.00
- December 16, 2008 to July 15, 2009:   $ 375.00
- July 16, 2009 to January 31, 2011:   $ 400.00
- February 1, 2011 to February 19, 2012:   $ 425.00
- February 20, 2012 to October 28, 2012:   $ 450.00

*See* Tr. 134:14-20; Carmelo Decl. ¶¶ 13-19; Juan Decl. ¶¶ 15-20; Def. Ex. C; Pl. Damages Calculation 2, 5.

  From the evidence presented at trial, the Court finds that Defendants paid Plaintiffs fixed weekly salaries based on the number of days they worked each week, irrespective of the number of hours worked. *See, e.g.*, Tr. 104:12-24; Carmelo Decl. ¶¶ 13-21; Juan Decl. ¶¶ 15-22; Def. Exs. A, C. For example, during the period that covered the week of November 25, 2013, Carmelo was to be paid a set weekly rate of $525.00 for six days of work. *See* Carmelo Decl. ¶ 18. That particular week, however, Defendants' records indicate that Carmelo worked only

five days. *See* Pl. Ex. 13, at 1.[7]  Defendants' records also show that Carmelo's pay that week

was $438.00—five-sixths of his weekly rate. *See* Pl. Ex. 13, at 2.  Likewise, when he worked

four days during the week of August 5, 2013, Carmelo received $350.00—four-sixths of his

weekly rate. *See id.* at 4-5.  At trial, Plaintiffs' counsel introduced examples consistent with this

formula. *See generally* Tr. 224:3-226:21; Pl. Ex. 13.

> The Court does not credit Devendra's implausible testimony that these weekly payments

represented Plaintiffs' "hourly wages, plus something extra that [he] used to pay them . . . for

whatever reason." Tr. 218:21-22; *see also id.* 226:7-14 (describing this additional amount as

"good-will money to make [employees] happy"); *id.* 242:19-23 (suggesting that these payments

would "cover[] up" any extra hours Plaintiffs worked).  Plaintiffs impeached Devendra on this

point with testimony from his deposition, at which he volunteered that Plaintiffs were paid a "set

weekly rate." *Id.* 239:1-8; *accord id.* 240:7-11, 267:9-16.

> 2. Tips

> Amma's delivery orders—and the associated tips—were paid for in one of four ways:

cash, credit card, Seamless, or internet services other than Seamless. *See, e.g., id.* 89:5-90:11,

130:8-25; 182:3-18.  Plaintiffs received cash tips directly from their customers, and credit-card

and other-than-Seamless internet tips were paid out daily in cash by Rajak. *See id.* 182:3-18;

Carmelo Decl. ¶¶ 24-25; Juan Decl. ¶¶ 25-26.  No record was kept of these payments. Tr. 263:5-

9; Carmelo Decl. ¶ 27; Juan Decl. ¶ 28.  Plaintiffs never received the tips paid through Seamless.

*See* Tr. 90:10-11, 130:23-25; Carmelo Decl. ¶ 26; Juan Decl. ¶ 27.  Seamless tips composed the

bulk of the total tips paid on delivery orders because Seamless orders tended to be more frequent

---

[7] Although Plaintiff's Exhibit 13 was not formally admitted into evidence at trial, all the
documents therein were admitted as part of Defendants' Exhibits A and C. *See* Tr. 150:12-14,
198:15-16, 223:13-19.

and larger than those made through other methods.  *See* Tr. 91:19-22, 93:5-9, 130:21-25, 182:12-15.

Defendants introduced at trial what they assert are weekly pay receipts signed by Plaintiffs.  *See* Def. Ex. C.  The receipts are written on the kind of guest check forms that restaurant servers use to record customers' orders.  *See id.*  Each receipt contains the employee's name, the dates of the pay period, the weekly pay rate, a figure purporting to be the employee's Seamless tips, the sum of the weekly rate and Seamless tips, and the employee's signature.  *See id.*  Devendra testified that Plaintiffs reviewed and signed these receipts weekly.  Tr. 197:25-198:9; Devendra Aff. ¶¶ 9-10.  However Plaintiffs and Murillo, reiterating that they never received Seamless tips, credibly testified that when they were asked to sign these receipts, the pages were either blank or folded such that the wage and tip figures were not visible.  Tr. 25:18-27:8, 40:22-43:10, 99:8-103:12, 135:5-137:22; Pl. Ex. 10 ("Murillo Decl.") ¶ 19; Carmelo Decl. ¶ 28; Juan Decl. ¶ 29.

Defendants presented no credible evidence to rebut these witnesses' accounts of the obscured pay receipts, nor any other evidence supporting Defendants' contention that they paid Seamless tips to Plaintiffs.  Despite attesting in their affidavits that Plaintiffs were paid "their full tips" and "were required to sign an itemized pay receipt every week, outlining the salary and Seamless tips they received," Perera Aff. ¶ 5; Shrestha Aff. ¶ 5; Rajak Aff. ¶ 4, Perera, Shrestha, and Rajak each conceded at trial that these facts were not within their personal knowledge, Tr. 154:21-155:18, 169:18-172:7, 182:16-184:24.  As noted above, at trial Anju thoroughly disclaimed her role in overseeing payroll and the pay receipts.  *Compare id.* 300:2-301:3, *with* Anju Aff. ¶¶ 9-10.  Accordingly, the Court credits Plaintiffs' and Murillo's credible testimony that they were not shown the receipts' pay amounts and calculations and that they were not paid

tips on orders placed through Seamless.

    3.  Notice

The parties dispute the methods and content of the notices that Defendants gave Plaintiffs regarding their wages and tips. Under both the FLSA and the NYLL, the burden of showing compliance with notice requirements is on the employer. *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(d). The Court addresses each purported method of notice in turn.

    a.  Compensation Discussions

Although Anju testified at trial that she recalled telling Carmelo when she hired him "that he's on [a] per-hour rate, they were on the tips," Tr. 292:10-15, she was impeached with testimony from her deposition, at which she stated he would be paid a set amount per week, *id.* 293:6-12. Anju also testified that she "always" told employees that Devendra would give them a fuller explanation of their pay structures. *Id.* 292:5-9. This comports with Anju's disclaimer at trial of her role in the restaurant's payroll and, combined with her conflicting testimony, leads the Court not to credit her account of the discussion with Carmelo. The Court credits Carmelo's testimony that he was never told he was going to be paid by the hour. *See* Tr. 103:14-15.

    b.  Posted Notices

At trial, Defendants introduced a set of blurry and undated photographs of labor notices posted in Amma's kitchen, *see* Def. Ex. F, and Devendra gave vague and conclusory testimony asserting that these were "different types of notices that, if required by different department[s], Labor Department, Tax Department, Workers' Compensation, minimum wages, that need to be posted," Tr. 200:21-23. Carmelo testified that he did not see these notices until "[l]ater on" in his time at Amma and that he "never . . . gave them much importance." *Id.* 110:5-14. Juan did

not see any such notices. *Id.* 139:12-14. Without clearer evidence of what specific notices were posted at Amma and when, the Court cannot conclude on the basis of these blurry photographs that the depicted posters provided any notice to Plaintiffs.

### c. Written Notices

Devendra testified that in August 2011 his accountant informed him that state law required him to distribute a pay notice to his employees. Tr. 265:15-18. In his affidavit, Devendra claimed that he provided such a notice to Plaintiffs, which they refused to sign. Devendra Aff. ¶ 16. Defendants did not introduce Plaintiffs' unsigned notices into evidence, although they did provide Murillo's signed—but undated—notice. *See* Def. Ex. G. Plaintiffs deny ever being shown this document. Carmelo Decl. ¶ 20; Juan Decl. ¶ 29. Given Devendra's lack of credibility on other issues, Defendants' burden of showing notice, and the absence of documentary evidence supporting the existence of these notices, the Court credits Plaintiffs' denials.

### d. Wage Statements

As previously stated, the Court finds that Plaintiffs were not shown the pay amounts and calculations recorded on the weekly pay receipts. At trial, Devendra confirmed that Plaintiffs were never given any statement of their weekly pay that they were permitted to keep for their own records. Tr. 262:18-21. Accordingly, the Court finds that Plaintiffs were not provided with wage statements.

## CONCLUSIONS OF LAW

I.    Statute of Limitations

The statute of limitations for claims brought under the FLSA is two years, but it expands to three years for willful violations. 29 U.S.C. § 255(a) (2012). To prove willfulness, an employee must establish "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Reckless disregard . . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013) (quoting *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005)). Mere negligence, on the other hand, will not support a finding of willfulness. *Id.* at 937.

Applying these principles, the Court concludes that Plaintiffs have established the Defendants' willfulness in violating the FLSA. Defendants do not contest that they had actual knowledge of their obligations under the FLSA; indeed, they contend that they "acted in good faith to comply with the FLSA" and that they "regularly consulted their accountant regarding employment requirements, and adjusted their policies accordingly." Def. Post-Trial Mem. 21-22, ECF No. 91; *see also* Tr. 265:8-20, 266:1-23, 268:1-269:15; Devendra Aff. ¶¶ 15-16, 19-20; Anju Aff. ¶¶ 15-16, 19-20. As discussed in more detail below, Defendants deliberately disregarded the FLSA's requirements, of which they were concededly aware. They failed to keep records beyond a patchwork of guest checks and clock-in times, failed to compensate Plaintiffs for overtime, and at times even failed to pay a minimum wage. These lapses were not incidental: they continued week in and week out for years. Given these willful violations, the FLSA's three-year statute of limitations applies, and Plaintiffs may assert FLSA claims reaching

back to January 24, 2011.

The NYLL has a six-year statute of limitations, which encompasses the entirety of

Plaintiffs' employment.  N.Y. Lab. Law §§ 198(3), 663(3) (McKinney, Westlaw through 2016

ch. 519).

II.  <u>Tip Credit</u>

Both the FLSA and the NYLL permit tipped restaurant employees such as Plaintiffs to

receive a cash wage lower than the statutory minimum if the cash wage and the employee's tips,

combined, meet the minimum wage.  *See* 29 U.S.C. §§ 203(m); N.Y. Lab. Law § 652(4); N.Y.

Comp. Codes R. & Regs. tit. 12, § 146-1.3 (Westlaw through Jan. 11, 2017).  This difference is

known as a tip credit.  Employers may take advantage of a tip credit only after satisfying certain

prerequisites imposed by federal and state law.

Under the FLSA, an employer seeking to apply a tip credit must first notify the employee

of the FLSA provisions governing such credits, and the employee must retain all tips received.

29 U.S.C. § 203(m).  These requirements "are strictly construed, and [they] must be satisfied

even if the employee received tips at least equivalent to the minimum wage." *Chung v. New

Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).  It is the employer's burden

to show that the notice requirement has been satisfied.  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F.

Supp. 3d 490, 497 (S.D.N.Y. 2015).  If the employer fails to make such a showing, it is liable for

the full minimum wage.  *Id.*

Prior to 2011, the NYLL and its implementing regulations required an employer seeking

to apply a tip credit to "furnish each employee with a statement with every payment of wages

listing" the credit claimed against the minimum wage.  *Padilla v. Manlapaz*, 643 F. Supp. 2d

302, 309-10 (E.D.N.Y. 2009) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2 (repealed

2011)). The employer was also required to "maintain and preserve for not less than six years weekly payroll records which shall show for each employee" the credits claimed. *Id.* at 310 (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.1 (repealed 2011)). Failure to comply with these requirements would result in liability for the minimum wage. *See id.*

Since 2011, the NYLL has required written notice similar to that mandated by the FLSA. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, -2.2. In particular, an employer seeking to apply a tip credit must provide the employee with written notice stating (1) the amount of tip credit to be claimed against the minimum wage and (2) that extra pay is required if the employee's tips are insufficient to bring his or her pay up to meet the minimum wage. *Id.* § 146-2.2(a). Acknowledgement of that notice, signed by the employee, must be retained for six years. *Id.* § 146-2.2(c).

As noted above, Defendants failed to comply with any of these prerequisites to applying a tip credit. Defendants did not give Plaintiffs any notice of their intent to apply such credits against Plaintiffs' wages, they did not provide wage statements documenting the credits, they did not keep payroll records of the credits, and they did not remit all of Plaintiffs' tips—namely, the Seamless tips. Accordingly, under both the FLSA and the NYLL, Defendants are liable for the full minimum wage.[8]

---

[8] As previously discussed, Plaintiffs spent at least three hours per thirteen-hour shift on non-delivery work such as cleaning the restaurant and kitchen. Defendants are alternatively liable for the full minimum wage on the basis that Plaintiffs spent more than two hours and more than 20 percent of their shifts on non-tipped work. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 (prohibiting tip credits on days in which employees' non-tipped work exceeds these thresholds); *accord id.* § 146-3.4(b).

III.    Regular, Overtime, and Spread-of-Hours Compensation

The FLSA[9] and the NYLL[10] require an employer to pay its employees at least a minimum wage per hour.  "[F]or any hours worked in excess of forty per week," the employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *accord* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.; *id.* § 137-1.3 (repealed 2011). Finally, under the NYLL, for each day that an employee works over an interval exceeding ten hours, the employee is entitled to an additional hour of pay at the minimum wage.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a).  To establish liability on a claim for underpayment of wages, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

The appendix to this order sets out the Court's calculations for the compensation owed to Plaintiffs.  The Court begins by calculating Plaintiffs' regular rate of pay.  Under the FLSA, the regular rate "is determined by dividing [an employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked." 29 C.F.R. § 778.109 (2016).  Under the NYLL, before January 1, 2011, the same calculation applied.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.5 (repealed 2011).  Since that date, the NYLL has instead calculated the regular rate "by dividing the employee's total weekly

---

[9] Since July 24, 2009, the federal minimum wage has been $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).

[10] From January 1, 2007 until July 23, 2009, New York's minimum wage was $7.15 per hour. N.Y. Lab. Law § 652(1).  From July 24, 2009 until December 30, 2013, New York's minimum wage was matched to the federal rate of $7.25 per hour. *See id.*

earning, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked." *Id.* § 146-3.5(b).

Defendants assert that Plaintiffs' weekly payments included premiums for the overtime hours Plaintiffs worked each week. As a result, Defendants argue, those premiums should be excluded when calculating the regular rate. *See* 29 C.F.R. § 778.202; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5. However, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). In other words, the employer must show that "the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate." *Id.* Here there is no credible evidence of any such agreement, intent, or understanding, and, therefore, this presumption has not been rebutted.

For those weeks in which Plaintiffs' regular rate of pay fell below the statutory minimum, they are entitled to recover the difference, as well as overtime premiums for the hours they worked beyond 40 each week. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1). Under the NYLL, Plaintiffs are also entitled to recover spread-of-hours payments for days when their shifts spanned more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a). Plaintiffs may recover under whichever statute—the FLSA or the NYLL—provides the greater relief. *See, e.g.*, *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234, 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016) (collecting cases), *adopted by* 2016 WL 6879258, at *1 (S.D.N.Y. Nov. 18, 2016). In this case, greater relief is available under the NYLL.

Accordingly, the Court's calculation of NYLL damages is reflected in the appendix.[11]

IV.    Meal Credits and Breaks

Defendants assert that Plaintiffs' recovery should be decreased to account for the costs and time associated with their meal breaks. Their arguments are unsupported by the evidence. In order to apply a credit for the cost of a meal, the FLSA requires records documenting the cost incurred for the meal, and the NYLL requires that the meal comprise several specified categories of nutritious foods. *E.g.*, *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *26-27 (S.D.N.Y. June 9, 2016) (citing 29 C.F.R. §§ 516.3(a), 531.3(a); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.9, -3.7); *Padilla*, 643 F. Supp. 2d at 310 n.10. There was no evidence at trial to support a finding that Defendants complied with either of these requirements, *see* Tr. 138:7-11, and, therefore, no meal credit will be applied against Plaintiffs' damages.

Likewise, the FLSA and the NYLL allow meal breaks to be deducted from employees' working hours only if the employee is not "performing activities predominantly for the benefit of the employer" during the break. *Perkins v. Bronx Lebanon Hosp. Ctr.*, No. 14 Civ. 1681, 2016 WL 6462117, at *4 (S.D.N.Y. Oct. 31, 2016) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997)) (FLSA), *appeal filed*, No. 16-3855-cv (2d Cir. Nov. 15, 2016); *see also id.* at *3 n.6 (NYLL). As noted above, Plaintiffs did not take breaks during their shifts; rather, they ate as they "continue[d] working." Tr. 138:1-2. Therefore, no meal breaks will be deducted from Plaintiffs' hours worked.

---

[11] Although Plaintiffs initially sought to recover the costs of their bicycles and other delivery equipment, *see, e.g.*, Am. Compl. ¶¶ 62, 89, ECF No. 18; Pl. Proposed Findings 19-20, 23, 25, they did not address them in their post-trial memoranda, *see generally* Pl. Post-Trial Mem.; Def. Post-Trial Mem. 3; Pl. Post-Trial Reply, ECF No. 92, and the Court deems these claims abandoned, *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 632 & n.1761 (S.D.N.Y. 2014) (collecting cases), *aff'd*, 833 F.3d 74 (2d Cir. 2016).

V.     Misappropriated Gratuities

The NYLL forbids employers from retaining gratuities received by or on behalf of employees.  N.Y. Lab. Law § 196-d.  The NYLL permits employees to recover gratuities that were unlawfully retained under this section.  *Suggs v. Crosslands Transp., Inc*, No. 13 Civ. 6731, 2015 WL 1443221, at *7 (E.D.N.Y. Mar. 4, 2015), *adopted by id.* at *1 (E.D.N.Y. Mar. 27, 2015).  Accordingly, Plaintiffs are entitled to recover their Seamless tips, which were never paid to them by Defendants.

The parties agree that Defendants' weekly pay receipts can be used to calculate the average weekly Seamless tip amount.  *See* Pl. Post-Trial Mem. 22; Def. Post-Trial Mem. 18.  For Carmelo, the average was $230.12 per week, and for Juan, $204.02 per week.  *See* Def. Ex. C; Pl. Post-Trial Mem. 22; Def. Post-Trial Mem. 18.  In the appendix, the Court uses these averages to calculate the Seamless tips withheld from Plaintiffs over the course of their employment.

VI.    Prejudgment Interest

The NYLL provides plaintiffs with prejudgment interest on unpaid wages.  *See, e.g.*, *Hernandez*, 2016 WL 3248493, at *35 (citing N.Y. Lab. Law § 198(1-a); *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).  The statutory rate of interest is 9% "per annum simple interest from a single reasonable intermediate date." *Id.* at *36 (citing N.Y. C.P.L.R. 5001(b), 5004).  Accordingly, Plaintiffs are entitled to interest calculated from the midpoint of their employment at Amma: March 22, 2011, for Carmelo and October 31, 2010, for Juan.

VII.   Liquidated Damages

Plaintiffs seek liquidated damages under both the FLSA and the NYLL.  "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d

22

Cir. 2008) (citing 29 U.S.C. § 216(b)). The Court, however, has the "discretion to deny liquidated damages where the employer shows that . . . it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Id.* (citing 29 U.S.C. § 260). The Second Circuit has held that the employer's burden in demonstrating good faith is "a difficult one" and that liquidated damages should be the norm rather than the exception. *Id.*

The NYLL also provides for the recovery of liquidated damages for wages and gratuities owed. *See Inclan*, 95 F. Supp. 3d at 504 (citing N.Y. Lab. Law §§ 198(1-a), 663(1)). Prior to November 24, 2009, an employee was entitled to a liquidated damages award equal to 25% of the wages due under the NYLL only if he could show that the employer's violation of the NYLL was willful under the same willfulness standard as the FLSA's statute of limitations, discussed above. *Id.* at 504-05. Following amendments that took effect on November 24, 2009, the NYLL's burden and standard changed: the employee is entitled to liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." *Id.* at 505. As of April 9, 2011, the NYLL's liquidated damages were increased from 25% to 100% of the wages due. *Id.* Courts treat the federal and state good-faith standards as analogous. *Id.*

The Second Circuit has recently clarified that FLSA-NYLL plaintiffs cannot recover liquidated damages under both statutes simultaneously. *Chowdhury v. Hamza Express Food Corp.*, No. 15-3142-cv, 2016 WL 7131854, at *2 (2d Cir. Dec. 7, 2016) (summary order). Accordingly, Plaintiffs may seek liquidated damages under whichever statute provides the greater relief.

For the reasons discussed above with respect to the FLSA statute of limitations, the Court

finds that Defendants willfully violated the FLSA and the NYLL. *A fortiori*, they lacked any good-faith basis for believing that they were in compliance with those laws, and Plaintiffs are entitled to liquidated damages in manner just described.

VIII.   Wage Notices

The NYLL requires that upon hiring, employers provide their employees with a written wage notice including "the employee's regular hourly pay, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a). The notice must be provided in English and the employee's primary spoken language. *Id.* The notice must be reissued prior to changing the employee's rate of pay,[12] and a signed receipt of the notice must be kept on file for six years. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(b), (c). "The employer has the burden of proving compliance with the notification provisions of [the NYLL]." *Id.* § 146-2.2(d).

As discussed above, Plaintiffs were given no such notices, and Defendants offer no records of them. Beginning on April 9, 2011, the NYLL provided employees with $50.00 per week, up to a total of $2,500.00, for violations of this notice requirement. *See* Wage Theft Prevention Act, sec. 7, § 198(1-b), 2010 N.Y. Laws at 1450. As Plaintiffs both worked without proper notice for more than 100 weeks after that date, they are entitled to the statutory maximum award of $2,500.00 each.

---

[12] A previous version of the NYLL additionally required annual notices at the start of each year. *See* Wage Theft Prevention Act, sec. 3, § 195(1)(a), 2010 N.Y. Laws 1446, 1446.

IX.   Wage Statements

In addition to the notice of employees' rate of pay just discussed, the NYLL also requires employers to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. Lab. Law § 195(3).[13]  For non-exempt employees like Plaintiffs, the statements must also list "the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked." *Id.*

Defendants failed to provide any wage statements to Plaintiffs.  Even Defendants' own records, which they obscured when signed by Plaintiffs, fail to include most of the required elements, including key information such as Plaintiffs' rates of pay and hours worked. *See* Def. Ex. C.  Beginning on April 9, 2011, the NYLL provided employees with $100.00 for per week, up to $2,500.00, for violations of this statement requirement. *See* Wage Theft Prevention Act, sec. 7, § 198(1-b), 2010 N.Y. Laws at 1450.  As Plaintiffs worked for more than 25 weeks after that date, they are entitled to the statutory maximum award of $2,500.00 each.

X.   Attorneys' Fees and Costs

Plaintiffs are entitled to attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1).  Although they anticipated submitting their fee and cost request with their post-trial reply brief, *see* Pl. Post-Trial Mem. 23,

---

[13] The list of elements required to be included in wage statements has been amended several times, but not in any way that would be material to the Court's conclusions here. *See, e.g.*, Wage Theft Prevention Act, sec. 3, § 195(1)(a), 2010 N.Y. Laws at 1450-51.

no such request was filed, *see generally* Pl. Post-Trial Reply.  By **February 24, 2017**, Plaintiffs'

counsel is directed to submit their request for attorneys' fees and costs.  By **March 10, 2017**,

Defendants' counsel shall file their opposition papers, if any.

XI.   Payment of Judgment

Pursuant to the NYLL, "if any amounts [of damages awarded under the NYLL] remain

unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after

expiration of the time to appeal and no appeal is then pending, whichever is later, the total

amount of judgment shall automatically increase by fifteen percent."  *Hernandez*, 2016 WL

3248493, at *36 (alteration in original) (quoting N.Y. Lab. Law § 198(4)).

## CONCLUSION

For the reasons stated, the Court finds that Plaintiffs have proven, by a preponderance of

the evidence, the aforementioned violations of the FLSA and the NYLL.  Taking into account

liquidated damages and prejudgment interest, the NYLL provides greater relief than the FLSA.

Plaintiffs are, therefore, entitled to NYLL damages as set forth above and in the appendix to this

order.  In sum, judgment is to be entered as follows: $475,959.37 to Carmelo Romero and

$315,696.00 to Juan Romero, as well as attorneys' fees and costs to be determined.

SO ORDERED.

Dated: February 10, 2017
       New York, New York

_____
ANALISA TORRES
United States District Judge

# APPENDIX

CARLOS ROMERO

| Period Start | Period End | Weeks in Period | Hours Per Week | Spread-of-hours Days Per Week | Credited Weekly Pay | Reg. Rate of Pay Per Hour | Overtime Rate of Pay Per Hour | Minimum Req. Rate Per Hour | Minimum Overtime Rate Per Hour | Lawful Wages & Overtime | Unpaid Wages & Overtime Per Week | Unpaid Wages & Overtime for Period | Liquidated Damages for Wages & Overtime for Period | Spread-of Hours Pay for Period | Unpaid Gratuities for Period | Liquidated Damages for Spread-of-Hours & Gratuities for Period | Prejudgment Interest for Period | Total Award for Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/15/2008 | 7/31/2008 | 2 | 78 | 6 | $375.00 | $4.81 | $7.21 | $7.15 | $10.73 | $693.55 | $318.55 | $637.10 | $159.28 | $85.80 | $460.24 | $136.51 | $627.81 | $2,106.73 |
| 8/1/2008 | 12/31/2008 | 22 | 78 | 6 | $400.00 | $5.13 | $7.69 | $7.15 | $10.73 | $693.55 | $293.55 | $6,458.10 | $1,614.53 | $943.80 | $5,062.64 | $1,501.61 | $6,614.06 | $22,194.74 |
| 1/1/2009 | 7/31/2009 | 29 | 78 | 6 | $425.00 | $5.45 | $8.17 | $7.25 | $10.88 | $703.25 | $268.55 | $7,787.95 | $1,946.99 | $1,244.10 | $6,673.48 | $1,979.60 | $8,333.83 | $27,965.74 |
| 7/24/2009 | 12/20/2009 | 21 | 78 | 6 | $425.00 | $5.45 | $8.17 | $7.25 | $10.88 | $703.25 | $278.25 | $5,842.25 | $1,460.56 | $913.50 | $4,832.52 | $1,426.51 | $6,149.62 | $20,636.20 |
| 12/21/2009 | 12/27/2009 | 1 | 71.5 | 5 | $385.00 | $5.38 | $8.08 | $7.25 | $10.88 | $632.56 | $247.56 | $247.56 | $61.89 | $36.25 | $230.12 | $66.59 | $272.71 | $915.12 |
| 1/1/2010 | 12/19/2010 | 50 | 78 | 6 | $385.00 | $5.77 | $8.65 | $7.25 | $10.88 | $703.25 | $253.25 | $12,662.50 | $3,165.63 | $2,175.00 | $11,506.00 | $3,420.25 | $13,978.66 | $46,908.03 |
| 12/21/2010 | 12/26/2010 | 1 | 78 | 6 | $487.50 | $6.25 | $9.38 | $7.25 | $10.88 | $703.25 | $215.75 | $215.75 | $53.94 | $43.50 | $230.12 | $68.41 | $259.67 | $871.39 |
| 12/27/2010 | 12/31/2010 | 1 | 78 | 6 | $450.00 | $5.77 | $8.65 | $7.25 | $10.88 | $703.25 | $253.25 | $253.25 | $63.31 | $43.50 | $230.12 | $68.41 | $279.57 | $938.16 |
| 1/1/2011 | 1/23/2011 | 3 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $1,923.75 | $480.94 | $130.50 | $690.36 | $205.22 | $1,456.37 | $4,887.14 |
| 1/24/2011 | 2/13/2011 | 3 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $1,923.75 | $480.94 | $130.50 | $690.36 | $205.22 | $1,456.37 | $4,887.14 |
| 2/14/2011 | 2/27/2011 | 2 | 71.5 | 5 | $412.50 | $10.31 | $15.47 | $7.25 | $10.88 | $999.77 | $487.27 | $974.53 | $243.63 | $72.50 | $460.24 | $138.82 | $779.80 | $2,683.88 |
| 2/28/2011 | 4/8/2011 | 6 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $3,847.50 | $961.88 | $261.00 | $1,380.72 | $410.43 | $2,912.75 | $9,774.27 |
| 4/9/2011 | 6/19/2011 | 10 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $6,412.50 | $1,603.13 | $435.00 | $2,301.20 | $684.05 | $4,854.58 | $23,151.98 |
| 6/20/2011 | 7/3/2011 | 2 | 90 | 7 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,509.38 | $984.38 | $984.38 | $246.09 | $50.75 | $230.12 | $280.87 | $671.38 | $3,201.87 |
| 7/4/2011 | 7/17/2011 | 2 | 65 | 5 | $375.00 | $5.77 | $8.65 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $87.00 | $29.00 | $230.12 | $259.12 | $970.92 | $1,563.76 |
| 7/18/2011 | 7/24/2011 | 1 | 65 | 5 | $375.00 | $5.77 | $8.65 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $351.56 | $29.00 | $230.12 | $324.05 | $1,545.41 | $1,545.41 |
| 7/25/2011 | 8/21/2011 | 4 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $2,565.00 | $641.25 | $174.00 | $920.48 | $266.37 | $1,903.79 | $9,760.79 |
| 8/22/2011 | 8/28/2011 | 1 | 65 | 5 | $375.00 | $5.77 | $8.65 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $351.56 | $29.00 | $230.12 | $327.89 | $1,563.76 | $1,563.76 |
| 8/29/2011 | 9/18/2011 | 3 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $1,923.75 | $1,923.75 | $130.50 | $690.36 | $266.37 | $1,456.37 | $6,945.59 |
| 9/19/2011 | 9/25/2011 | 1 | 65 | 5 | $375.00 | $5.77 | $8.65 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $351.56 | $29.00 | $230.12 | $327.89 | $1,563.76 | $1,563.76 |
| 10/1/2011 | 10/2/2011 | 1 | 52 | 4 | $300.00 | $7.50 | $11.25 | $7.25 | $10.88 | $435.00 | $135.00 | $135.00 | $135.00 | $29.00 | $230.12 | $259.12 | $209.13 | $25,467.17 |
| 10/3/2011 | 12/18/2011 | 11 | 78 | 6 | $375.00 | $9.38 | $14.06 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $351.56 | $36.25 | $230.12 | $259.12 | $209.13 | $209.13 |
| 12/19/2011 | 12/25/2011 | 1 | 52 | 4 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $7,053.75 | $7,053.75 | $478.50 | $2,531.32 | $3,009.82 | $5,340.03 | $5,340.03 |
| 12/26/2011 | 1/1/2012 | 1 | 65 | 5 | $412.50 | $10.31 | $15.47 | $7.25 | $10.88 | $899.77 | $487.27 | $487.27 | $487.27 | $36.25 | $230.12 | $266.37 | $2,315.20 | $2,315.20 |
| 1/2/2012 | 1/8/2012 | 1 | 65 | 5 | $375.00 | $9.38 | $14.06 | $7.25 | $10.88 | $726.56 | $351.56 | $351.56 | $351.56 | $36.25 | $230.12 | $266.37 | $1,563.76 | $1,563.76 |
| 1/9/2012 | 2/19/2012 | 6 | 78 | 6 | $450.00 | $11.25 | $16.88 | $7.25 | $10.88 | $1,091.25 | $641.25 | $641.25 | $641.25 | $130.50 | $690.36 | $266.37 | $327.89 | $327.89 |
| 2/19/2012 | 2/19/2012 | 1 | 65 | 5 | $475.00 | $11.88 | $17.81 | $7.25 | $10.88 | $1,151.88 | $676.88 | $676.88 | $351.56 | $36.25 | $230.12 | $266.37 | $1,563.76 | $1,563.76 |
| 2/20/2012 | 6/17/2012 | 16 | 78 | 6 | $475.00 | $11.88 | $17.81 | $7.25 | $10.88 | $1,151.88 | $676.88 | $10,830.00 | $10,830.00 | $696.00 | $3,681.92 | $4,377.92 | $8,069.78 | $13,891.19 |
| 6/11/2012 | 6/17/2012 | 1 | 65 | 5 | $400.00 | $10.00 | $15.00 | $7.25 | $10.88 | $775.00 | $375.00 | $375.00 | $375.00 | $36.25 | $230.12 | $266.37 | $340.33 | $1,623.07 |
| 6/18/2012 | 10/7/2012 | 16 | 78 | 6 | $475.00 | $11.88 | $17.81 | $7.25 | $10.88 | $1,151.88 | $676.88 | $10,830.00 | $10,830.00 | $696.00 | $3,681.92 | $4,377.92 | $8,069.78 | $38,485.62 |
| 10/8/2012 | 10/14/2012 | 1 | 65 | 5 | $400.00 | $10.00 | $15.00 | $7.25 | $10.88 | $775.00 | $375.00 | $375.00 | $375.00 | $36.25 | $230.12 | $266.37 | $340.33 | $340.33 |
| 10/15/2012 | 10/21/2012 | 1 | 91 | 7 | $525.00 | $11.88 | $17.81 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $315.00 | $50.75 | $230.12 | $280.87 | $711.27 | $2,405.35 |
| 10/22/2012 | 10/28/2012 | 1 | 78 | 6 | $555.00 | $11.88 | $17.81 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $315.00 | $43.50 | $230.12 | $273.62 | $504.36 | $2,405.35 |
| 10/29/2012 | 11/4/2012 | 1 | 91 | 7 | $550.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $348.00 | $58.00 | $230.12 | $288.12 | $273.62 | $340.33 |
| 11/24/2012 | 11/24/2012 | 1 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,394.38 | $819.38 | $819.38 | $913.50 | $43.50 | $230.12 | $259.12 | $504.36 | $2,405.35 |
| 12/3/2012 | 1/6/2013 | 8 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $5,985.00 | $5,985.00 | $348.00 | $1,840.96 | $2,188.96 | $4,337.35 | $7,756.98 |
| 6/2/2013 | 6/2/2013 | 1 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $305.25 | $305.25 | $305.25 | $29.00 | $230.12 | $259.12 | $299.47 | $1,428.21 |
| 6/3/2013 | 6/8/2013 | 21 | 78 | 6 | $555.00 | $10.25 | $15.38 | $7.25 | $10.88 | $794.38 | $384.38 | $15,710.63 | $15,710.63 | $913.50 | $4,832.52 | $5,746.02 | $11,385.54 | $54,298.83 |
| 6/8/2013 | 6/8/2013 | 1 | 65 | 5 | $410.00 | $10.25 | $15.38 | $7.25 | $10.88 | $794.38 | $384.38 | $384.38 | $384.38 | $36.25 | $230.12 | $266.37 | $273.62 | $273.62 |
| 6/9/2013 | 8/4/2013 | 8 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $5,985.00 | $5,985.00 | $348.00 | $1,840.96 | $2,188.96 | $299.47 | $299.47 |
| 8/5/2013 | 8/18/2013 | 2 | 52 | 4 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $949.38 | $459.38 | $459.38 | $459.38 | $58.00 | $460.24 | $518.24 | $11,385.54 | $11,385.54 |
| 8/19/2013 | 9/2/2013 | 1 | 78 | 6 | $490.00 | $12.25 | $18.38 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $315.00 | $43.50 | $230.12 | $273.62 | $504.36 | $504.36 |
| 9/2/2013 | 9/16/2013 | 3 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $2,244.38 | $2,244.38 | $130.50 | $690.36 | $820.86 | $4,337.35 | $4,337.35 |
| 9/16/2013 | 10/6/2013 | 3 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $2,244.38 | $2,244.38 | $130.50 | $690.36 | $820.86 | $1,626.51 | $2,108.62 |
| 10/6/2013 | 10/13/2013 | 1 | 52 | 4 | $575.00 | $14.38 | $21.56 | $7.25 | $10.88 | $1,273.13 | $819.38 | $819.38 | $819.38 | $43.50 | $230.12 | $273.62 | $385.10 | $442.14 |
| 10/7/2013 | 10/13/2013 | 1 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $459.38 | $43.50 | $230.12 | $273.62 | $1,626.51 | $7,756.98 |
| 10/14/2013 | 11/24/2013 | 6 | 78 | 6 | $525.00 | $13.13 | $19.69 | $7.25 | $10.88 | $1,273.13 | $748.13 | $748.13 | $819.38 | $43.50 | $230.12 | $273.62 | $1,626.51 | $7,756.98 |
| 11/25/2013 | 11/30/2013 | 1 | 65 | 5 | $438.00 | $10.95 | $16.43 | $7.25 | $10.88 | $848.63 | $410.63 | $410.63 | $410.63 | $36.25 | $230.12 | $266.37 | $359.23 | $1,713.22 |

| | | | | | | | | | | | | Total Wage and Tip Damages | | | | | | $470,959.37 |
| | | | | | | | | | | | | Wage Notice Penalties | | | | | | $2,500.00 |
| | | | | | | | | | | | | Wage Statement Penalties | | | | | | $2,500.00 |
| | | | | | | | | | | | | **TOTAL JUDGMENT** | | | | | | **$475,959.37** |

**JUAN ROMERO**

| Period Start | Period End | Weeks in Period | Hours Per Week | Spread-of Hours Days Per Week | Credited Weekly Pay | Reg. Rate of Pay Per Hour | Overtime Rate of Pay Per Hour | Minimum Reg. Rate Per Hour | Minimum Overtime Rate Per Hour | Lawful Weekly Wages & Overtime | Underpaid Wages & Overtime Per Week | Underpaid Wages & Overtime Per Period | Liquidated Damages for Wages & Overtime Per Period | Spread-of Hours Pay Per Period | Unpaid Gratuities Per Period | Liquidated Damages for Spread-of Hours & Gratuities Per Period | Prejudgment Interest for Period | Total Award for Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2008 | 12/15/2008 | 6 | 78 | 6 | 350.00 | 4.49 | 6.73 | 7.15 | 10.73 | 693.55 | 343.55 | 2,061.30 | 515.33 | 257.40 | 1,224.12 | 370.38 | 2,003.97 | 6,432.50 |
| 12/16/2008 | 7/15/2009 | 30 | 78 | 6 | 375.00 | 4.81 | 7.21 | 7.15 | 10.73 | 693.55 | 318.55 | 9,556.50 | 2,389.13 | 1,287.00 | 6,120.60 | 1,851.90 | 9,595.64 | 30,800.76 |
| 7/16/2009 | 7/23/2009 | 1 | 78 | 6 | 400.00 | 5.13 | 7.69 | 7.15 | 10.73 | 693.55 | 293.55 | 293.55 | 73.39 | 42.90 | 204.02 | 61.73 | 305.71 | 981.30 |
| 7/24/2009 | 12/20/2009 | 21 | 78 | 6 | 400.00 | 5.13 | 7.69 | 7.25 | 10.88 | 703.25 | 303.25 | 6,368.25 | 1,592.06 | 913.50 | 4,284.42 | 1,299.48 | 6,542.33 | 21,030.05 |
| 12/21/2009 | 1/3/2010 | 2 | 65 | 5 | 380.00 | 5.08 | 7.62 | 7.25 | 10.88 | 561.88 | 231.88 | 463.75 | 115.94 | 72.50 | 408.04 | 120.14 | 534.13 | 1,714.49 |
| 1/4/2010 | 1/17/2010 | 2 | 78 | 6 | 400.00 | 5.13 | 7.69 | 7.25 | 10.88 | 703.25 | 303.25 | 606.50 | 151.63 | 87.00 | 408.04 | 123.76 | 623.08 | 2,000.01 |
| 1/18/2010 | 1/24/2010 | 1 | 65 | 5 | 380.00 | 5.08 | 7.62 | 7.25 | 10.88 | 561.88 | 231.88 | 231.88 | 57.97 | 36.25 | 204.02 | 60.07 | 267.07 | 857.25 |
| 1/25/2010 | 12/19/2010 | 47 | 78 | 6 | 438.00 | 5.55 | 8.33 | 7.25 | 10.88 | 703.25 | 303.25 | 14,253.75 | 3,563.44 | 2,044.50 | 9,588.94 | 2,908.36 | 14,642.36 | 47,000.10 |
| 12/20/2010 | 12/26/2010 | 1 | 78 | 6 | 400.00 | 5.13 | 7.69 | 7.25 | 10.88 | 703.25 | 270.25 | 270.25 | 67.56 | 43.50 | 204.02 | 61.88 | 292.87 | 940.09 |
| 12/27/2010 | 12/31/2010 | 1 | 78 | 6 | 400.00 | 5.13 | 7.69 | 7.25 | 10.88 | 703.25 | 303.25 | 303.25 | 75.81 | 43.50 | 204.02 | 61.88 | 311.54 | 1,000.00 |
| 1/1/2011 | 1/23/2011 | 3 | 78 | 6 | 400.00 | 10.00 | 15.00 | 7.25 | 10.88 | 970.00 | 570.00 | 1,710.00 | 427.50 | 130.50 | 612.06 | 185.64 | 1,387.28 | 4,452.98 |
| 1/24/2011 | 1/31/2011 | 1 | 78 | 6 | 425.00 | 10.00 | 15.00 | 7.25 | 10.88 | 970.00 | 570.00 | 570.00 | 142.50 | 43.50 | 204.02 | 61.88 | 462.43 | 1,494.33 |
| 2/1/2011 | 2/27/2011 | 4 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 2,422.50 | 605.63 | 174.00 | 816.08 | 247.52 | 1,930.30 | 6,196.03 |
| 2/28/2011 | 3/6/2011 | 1 | 65 | 5 | 355.00 | 8.88 | 13.31 | 7.25 | 10.88 | 687.81 | 332.81 | 332.81 | 83.20 | 36.25 | 204.02 | 60.07 | 324.16 | 1,040.51 |
| 3/7/2011 | 4/8/2011 | 5 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 3,028.13 | 757.03 | 217.50 | 1,020.10 | 309.40 | 2,412.88 | 7,745.04 |
| 4/9/2011 | 8/21/2011 | 19 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 11,506.88 | 11,506.88 | 826.50 | 3,876.38 | 4,702.88 | 9,188.95 | 41,588.46 |
| 8/22/2011 | 8/28/2011 | 1 | 65 | 5 | 355.00 | 8.88 | 13.31 | 7.25 | 10.88 | 687.81 | 332.81 | 332.81 | 332.81 | 36.25 | 204.02 | 240.27 | 324.16 | 1,470.33 |
| 8/29/2011 | 10/2/2011 | 5 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 3,028.13 | 3,028.13 | 217.50 | 1,020.10 | 1,237.60 | 2,412.88 | 10,944.33 |
| 10/3/2011 | 10/9/2011 | 1 | 91 | 7 | 495.00 | 12.38 | 18.56 | 7.25 | 10.88 | 1,441.69 | 946.69 | 946.69 | 946.69 | 43.50 | 204.02 | 247.52 | 675.50 | 3,063.91 |
| 10/10/2011 | 12/18/2011 | 10 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 6,056.25 | 6,056.25 | 435.00 | 2,040.20 | 2,475.20 | 4,825.76 | 21,888.66 |
| 12/19/2011 | 12/25/2011 | 1 | 71.5 | 5 | 390.00 | 9.75 | 14.63 | 7.25 | 10.88 | 850.69 | 460.69 | 460.69 | 460.69 | 36.25 | 204.02 | 240.27 | 396.49 | 1,798.41 |
| 12/26/2011 | 1/1/2012 | 1 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 605.63 | 605.63 | 43.50 | 204.02 | 247.52 | 482.57 | 2,188.87 |
| 1/2/2012 | 1/8/2012 | 1 | 65 | 5 | 355.00 | 10.63 | 15.94 | 7.25 | 10.88 | 687.81 | 332.81 | 332.81 | 332.81 | 36.25 | 204.02 | 240.27 | 324.16 | 1,470.33 |
| 1/9/2012 | 2/19/2012 | 6 | 78 | 6 | 425.00 | 10.63 | 15.94 | 7.25 | 10.88 | 1,030.63 | 605.63 | 3,633.75 | 3,633.75 | 261.00 | 1,224.12 | 1,485.12 | 2,895.46 | 13,133.20 |
| 2/20/2012 | 2/26/2012 | 1 | 78 | 6 | 450.00 | 11.25 | 16.88 | 7.25 | 10.88 | 1,091.25 | 641.25 | 641.25 | 641.25 | 43.50 | 204.02 | 247.52 | 202.71 | 1,980.25 |
| 2/27/2012 | 3/11/2012 | 2 | 78 | 6 | 450.00 | 11.25 | 16.88 | 7.25 | 10.88 | 1,091.25 | 641.25 | 1,282.50 | 1,282.50 | 87.00 | 408.04 | 495.04 | 1,005.45 | 4,560.53 |
| 3/12/2012 | 3/18/2012 | 1 | 65 | 5 | 375.00 | 9.38 | 14.06 | 7.25 | 10.88 | 726.56 | 351.56 | 351.56 | 351.56 | 36.25 | 204.02 | 240.27 | 334.77 | 1,518.43 |
| 3/19/2012 | 9/30/2012 | 28 | 78 | 6 | 450.00 | 11.25 | 16.88 | 7.25 | 10.88 | 1,091.25 | 641.25 | 17,955.00 | 17,955.00 | 1,218.00 | 5,712.56 | 6,930.56 | 14,076.16 | 63,847.28 |
| 10/1/2012 | 10/14/2012 | 2 | 65 | 5 | 375.00 | 9.38 | 14.06 | 7.25 | 10.88 | 726.56 | 351.56 | 703.13 | 703.13 | 72.50 | 408.04 | 480.54 | 669.53 | 3,036.86 |
| 10/15/2012 | 10/28/2012 | 2 | 78 | 6 | 450.00 | 11.25 | 16.88 | 7.25 | 10.88 | 1,091.25 | 641.25 | 1,282.50 | 1,282.50 | 87.00 | 408.04 | 495.04 | 1,005.45 | 4,560.53 |

| | |
|---|---|
| **Total Wage and Tip Damages** | $ 310,696.00 |
| **Wage Notice Penalties** | $ 2,500.00 |
| **Wage Statement Penalties** | $ 2,500.00 |
| **TOTAL JUDGEMENT** | $ 315,696.00 |